UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER HURST,

       Plaintiff,                        CIVIL ACTION NO. 11-10252

vs.

                                       DISTRICT JUDGE ROBERT H. CLELAND

COMMISSIONER OF               MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

**I. RECOMMENDATION:** This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 10) be DENIED, Defendant's Motion For Summary Judgment (docket no. 12) be GRANTED and the instant complaint be dismissed.

**II. PROCEDURAL HISTORY:**

Plaintiff filed an application for Supplemental Security Income on September 28, 2005 at age nineteen, alleging disability since September 1, 1995. (TR 50-55). The Social Security Administration denied benefits. (TR 40-43). Plaintiff then requested a hearing before an Administrative Law Judge (ALJ) and amended his application to allege only a closed period of disability from October 2005 through August 2007, to reflect the fact that he had engaged in substantial gainful employment as a courtesy clerk with Kroger as of September 2007. (TR 36-37, 94-95). The parties appeared for the requested *de novo* hearing on September 2, 2008 before ALJ E. Patrick Golden. (TR 143-51). On October 16, 2008 the ALJ issued his decision finding that Plaintiff was not disabled because he was able to perform his past relevant work as a courtesy clerk.

1

(TR 12-21). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 5-7).

### III. PLAINTIFF'S TESTIMONY AND EVIDENCE OF MENTAL IMPAIRMENT

Plaintiff was twenty-two years old at the time of the administrative hearing. He completed high school through a special education program for the learning disabled. (TR 80, 117, 147). Plaintiff is single, he has no children, and he lives with his grandmother. He has only occasional contact with his mother and no contact with his father. At the time of the administrative hearing, Plaintiff worked as a bagger and courtesy clerk for Kroger. (TR 146). His other job duties at Kroger consisted of cleaning restrooms, emptying the trash, and retrieving grocery carts. (TR 149). Plaintiff received assistance from the Michigan Rehabilitation Services in finding his job. (TR 138-39, 148). He does not have a driver's license but he knows how to use public transportation and he is able to leave his grandmother's house and shop without supervision. (TR 71, 147). Before he began working Plaintiff spent his days watching television and assisting his grandmother with household chores, including laundry, housecleaning, and simple meal preparation. (TR 60-76, 133-34, 147). He is independent in his personal care and hygiene. (TR 61-62, 69-70).

In January 1997, when he was eleven years old, Plaintiff was evaluated by Kathleen Cadaret, M.A., school psychologist, to determine his continued eligibility for special education services. (TR 114-17). Plaintiff's verbal IQ was 70, his performance IQ was 60, and his full scale IQ was 62. (TR 114). Cadaret noted that Plaintiff had an overall intellectual functioning within the mildly impaired range but that test scores indicated that this was a low estimate of Plaintiff's potential. (TR 115-16).

Terrance Mills, Ph.D., licensed psychologist, performed psychological testing on Plaintiff on March 21, 2006 for the state disability determination service (DDS). (TR 130-31). Dr. Mills

observed that Plaintiff was friendly, responsive, cooperative, attentive, energetic, he stayed on task, and his orientation to task was good as he understood directions with minor clarification. (TR 131). Plaintiff had a verbal IQ of 68, a performance IQ of 63, and a full scale IQ of 63. (TR 131). Dr. Mills diagnosed Plaintiff with mild mental retardation and indicated that he could not manage his benefit funds independently. (TR 131).

Dr. M. Bhavsar, M.D. also evaluated Plaintiff on March 21, 2006 for the state DDS and diagnosed Plaintiff with mild mental retardation. (TR 133-35). Dr. Bhavsar observed that Plaintiff had slow speech and thought processes, he had adequate recent and past memory and judgment, and deficient immediate memory. (TR 134). Dr. Bhavsar noted that Plaintiff was not able to perform serial sevens, but he could perform serial threes and simple addition and multiplication calculations. (TR 134). Dr. Bhavsar opined that Plaintiff could not manage his funds. (TR 135).

On April 21, 2006 Edward Czarnecki, Ph.D., a licensed psychologist, reviewed Plaintiff's records and found that he had a moderate limitation in maintaining concentration, persistence, or pace, mild limitations in activities of daily living and social functioning, and no episodes of decompensation. (TR 96-110). Dr. Czarnecki opined that Plaintiff retained the mental capacity to sustain an independent routine of simple work activity but he may be limited in meeting more complex and detailed work demands. (TR 98).

## IV.  VOCATIONAL EXPERT TESTIMONY

The ALJ asked the Vocational Expert (VE) to describe the type of work in which Plaintiff was engaged. The VE classified Plaintiff's job as "unskilled medium courtesy clerk" with a stress level of two on a scale of one to five. (TR. 150). The VE testified that the job did not require independent decision making but did require interaction with the public and with store employees

and supervisors.  (TR 150-51).  An individual in this position would receive supervision from cashiers and coworkers.  The ALJ did not ask the VE to testify as to whether there were other jobs that a person with Plaintiff's limitations could perform.

## V.  ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff had not engaged in substantial gainful activity during his alleged closed period of disability and suffers from a severe impairment of mild mental retardation/learning disorder, he does not have an impairment or combination of impairments that meets or equals the Listing of Impairments.  (TR 17).  The ALJ also found that Plaintiff is capable of performing his past relevant work as a courtesy clerk.  (TR 20).  Therefore the ALJ concluded that Plaintiff is not disabled for purposes of receiving Supplemental Security Income.  (TR 20).

## VI.  LAW AND ANALYSIS

### A.  Standard of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether he employed the proper legal standards.  *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is not the function of the court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

**B.     Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. he was not presently engaged in substantial gainful employment; and
2. he suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. he did not have the residual functional capacity to perform his past relevant work.

20 C.F.R. § 416.920(a)-(f). If Plaintiff's impairments prevented him from doing his past relevant work, or if Plaintiff did not have any past relevant work, the Commissioner, at step five, would consider Plaintiff's residual functional capacity (RFC), age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. 20 C.F.R. § 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted).

**C.     Analysis**

The ALJ applied the Commissioner's five-step disability analysis and found at step one that

Plaintiff did not engage in substantial gainful employment during the alleged closed period of disability. (TR 17). At step two, the ALJ concluded that Plaintiff's mild mental retardation/learning disorder was a severe impairment. (TR 17). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or equals one of the listings in the regulations. (TR 17-19). At step four, the ALJ determined that Plaintiff had the residual functional capacity to understand, remember and carry out simple instructions; make judgments on simple work-related decisions; interact appropriately with the public, supervisors and co-workers; respond appropriately to work pressures in a usual work setting; and respond appropriately to changes in a routine work setting. (TR 19-20). The ALJ ended his analysis at step four, finding that Plaintiff was not disabled because he retained the residual functional capacity to perform his past relevant work as a courtesy clerk. (TR 19-21).

The parties do not dispute the ALJ's findings at steps one through three and there is substantial evidence in the record to support these findings. The only issue before the Court is whether the ALJ erred in finding at step four that Plaintiff could perform his past relevant work as a courtesy clerk. Plaintiff argues that the courtesy clerk job could not be considered past relevant work because his earnings did not reach or exceed the level indicative of substantial gainful activity until September 2007, after his requested period of disability ended. According to Plaintiff, in cases involving a closed period of disability, past relevant work must meet the definition of substantial gainful activity and be performed "[w]ithin the 15 years before the end of the closed period." (Docket no. 10 at p. 7, citing Program Manual Operation System (POMS), DI 25001.001(B)(65)).

Past relevant work is defined as work done "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R.

§ 416.960(b)(1). If the claimant has no work experience or worked only off-and-on or for brief periods of time during the 15-year period, the work experience will not apply. 20 C.F.R. § 416.965(a). Social Security Ruling (SSR) 82-62 defines the applicable 15-year period as "the 15 years prior to the time of *adjudication* at the initial, reconsideration or higher appellate level." SSR 82-62, 1982 WL 31386, at *2 (1982) (emphasis added). Courts that have addressed this or similar issues have concluded that in closed period cases past relevant work must be measured from the date of adjudication even if the past relevant work began after the period of disability ended. *Mitchell v. Comm'r*, 393 Fed. Appx. 651, 654 (11th Cir. 2010) (finding "no authority ... for the proposition that in closed period cases past relevant work is limited to work performed before the claimed period of disability."); *Mayes v. Astrue*, No. 09-380, 2010 WL 4568833, at *5 (E.D. Ky. Nov. 3, 2010); *Naegele v. Barnhart*, 433 F.Supp.2d 319, 325-26 (W.D. N.Y. 2006).

Plaintiff states that his wages reached and exceeded the amounts required for substantial gainful activity in September 2007. (Docket no. 10 at p. 8). This was less than 15 years before the ALJ adjudicated Plaintiff's claim in October 2008. Accordingly, the ALJ did not err in determining that Plaintiff's job as a courtesy clerk was past relevant work. Furthermore, there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff was not disabled because he could perform his past relevant work as a courtesy clerk. Therefore, the Court should deny Plaintiff's motion for summary judgment, grant Defendant's motion for summary judgment, and affirm the final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation,

but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: January 3, 2012          s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

8

Dated: January 3, 2012            s/ Lisa C. Bartlett
                                              Case Manager